**SO ORDERED.**

**SIGNED this 15th day of May, 2015.**



/s/ Dale L. Somers
Dale L. Somers
United States Bankruptcy Judge

_____

Not Designated for Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>MARK STEPHEN NEIGHBORS,<br>SHELLY KAY NEIGHBORS,<br>NEIGHBORS INVESTMENTS, INC.,<br><br>　　　　　　DEBTORS. | CASE NO. 11-21003-11<br><br>CASE NO. 11-21022-11<br>CHAPTER 11 |
| MARK STEPHEN NEIGHBORS,<br>SHELLY KAY NEIGHBORS,<br>NEIGHBORS INVESTMENTS, INC.,<br><br>　　　　　　PLAINTIFFS,<br><br>v.<br><br>LINDA LOUISE BEADLE,<br><br>　　　　　　DEFENDANT. | <br><br><br><br><br><br>ADV. NO. 12-6097 |

ORDER DENYING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

This proceeding is before the Court on the Plaintiffs' motion for partial summary judgment.[1] The Plaintiffs appear by counsel Camron Hoorfar. The Defendant appears by counsel Colin N. Gotham. The Court has reviewed the relevant materials and is now ready to rule.

**Facts**

The Defendant used to work for the Plaintiffs, performing some accounting as well as other duties. In the complaint that commenced this proceeding, the Plaintiffs claimed the Defendant took money from them through various unauthorized transactions, and stole and destroyed records to hide her activities. They asked for $350,000 in compensatory damages and $250,000 in punitive damages.

In their motion for summary judgment, the Plaintiffs allege the Defendant has admitted taking money from them through eleven checks made payable to her but not signed by any of the three people authorized to sign such checks, Plaintiffs Mark Neighbors and Shelly Neighbors, and their son, Marcus Justin Neighbors. These checks are not specifically identified in the motion, but various checks are listed in three attached affidavits. The affidavits list twelve separate checks (one check is listed twice), but only eight of them are alleged to have been payable to the Defendant. The motion expresses no reason why the Defendant might be liable to the Plaintiffs for checks that were not payable to her. The checks were deducted from the Plaintiffs' accounts in 2007 and

---

[1] Doc. no. 118.

2008.  The eight checks payable to the Defendant total $2,174.38.  The motion cannot be good for more than that amount.  But the motion has even more substantial defects than that one.

Paragraph III.a. of the motion says, "Despite no authority to do so, Defendant admits, multiple times, to signing Mark Neighbor's (one of the Plaintiffs) name on documents."  The request for admission cited to support that statement reads, "You have forged Mark Neighbor's signature on a Form W-2," and the Defendant's response reads, "Deny.  Defendant may have signed a W-2, but only at the express direction of Mark Neighbors."  Two more requests for admission are cited in support as well, but the Defendant's responses to them also say she may have signed documents, but only at the express direction of Mark Neighbors.  Two requests for interrogatory are also cited in support, but again, the Defendant's responses say any time she signed Mark Neighbors's name to a document, it was at his specific direction.  In her objection to the Plaintiffs' motion, the Defendant claims that she was given express authority by the Plaintiffs to sign a W-2 and other tax documents, but that she never forged or admitted forging the signature of any of the Neighborses.  She adds that the Plaintiffs knew what she was doing any time she signed a document on their behalf, and that they had access to and knowledge of all the company's accounts.

Paragraph III.c. of the motion says, "In addition to various documents, Defendants admits to signing Mark Neighbor's name on checks that were made payable to the Defendant."  The request for admission cited to support that statement reads, "You have

3

forged Mark Neighbor's signature on checks," and the Defendant's response reads, "Deny. Defendant may have signed a check, but only at the express direction of Mark Neighbors." In her objection to the Plaintiffs' motion, the Defendant responds that she has never admitted signing any checks made payable to her, and that she never had the ability to obtain money from the Plaintiffs without their knowledge

Paragraph III.e. of the motion says, "Furthermore, Defendant confirms that some of the checks made payable to her were not signed by the Plaintiffs." The request for interrogatory cited to support that statement reads, "With respect to Plaintiffs' Exhibits 4 and 7, which are enclosed, do the following: a. Identify by check number and amount, each check that bears the signature of the Plaintiffs but that you know to not actually have been signed by the Plaintiffs," and the Defendant responded by listing 82 checks by check number, a dollar amount, and a phrase such as "Mark's signature," "Marcus Justin Neighbors' signature," or simply the name Mark Neighbors, Shelly Neighbors, or Marcus Justin Neighbors without the word "signature." It is not clear what the Defendant meant by her response to this interrogatory. It appears she may have thought the interrogatory was asking her to state whose signature appears on each check, rather than to identify checks she knew had not been signed by Mark or Shelly Neighbors, or their son, Marcus Justin Neighbors, who also had signing authority on the accounts. In any event, her answer may well be non-responsive, but no motion to compel her to amend it has been filed. In her objection to the Plaintiffs' motion, the Defendant says all checks that were made payable to her were signed by the individual Plaintiffs or their son.

4

Paragraph IV.a. of the motion says, "Defendant admits to making checks payable to herself from the Plaintiffs' bank accounts." To support this statement, the Plaintiffs cited parts of a transcript of a police interrogation of the Defendant, which read:

> A      I mean sometimes I would write myself like a reimbursement check for like -- because I'd get off work and then I'd have to go by First National Bank, I'd have to go by Cornerstone Bank, I'd have to go by Bank of the Valley, I'd have to go by Metcalf Bank, you know.
>
> Q      So you were running errands after work?
>
> A      All the time, I mean, every day, you know. And --
>
> Q      Could that be -- I mean --
>
> A      And some of the like just regular -- regular checks, it was just kind of like a mileage, you know, thing. But an actual, you know, payroll check like --

and

> A      I - - I am worried about me. I don't remember ever writing me like a payroll check back to back for the same time period, you know. And two checks. I mean, I know I like wrote a check and be like, you know, thinking, oh, I'll write -- you know, I just wrote it for 80 hours, whatever, and then by the time I actually figured up my hours, I'd be like, oh, wait a minute, I had like from six hours overtime, you know, and I would void that one and rewrite another one. But --

The Court notes these statements could easily mean the Defendant prepared checks but then asked one of the authorized signatories to sign them, and not that she signed them herself. Furthermore, the statements do not identify any of the checks involved in the Plaintiffs' motion as ones the Defendant prepared. In her objection to the Plaintiffs'

motion, the Defendant says she never made nor admitted to making checks payable to herself from the Plaintiffs' bank accounts. She adds that she has never admitted to paying herself with the Plaintiffs' money, nor to stealing money from them.

Paragraph V. of the motion says, "Defendant admits that she took funds from the Plaintiffs to help out her daughter and grandchildren. a. When questioned by Detective Leiker, Defendant admits that she often needed funds to help out her daughter and grandchildren." To support these statements, or perhaps just part a., the Plaintiffs cited a part of the police interrogation transcript which reads:

> A    I mean, if I -- if I ever had actual money, I would always like, you know help my daughter and my grandkids, you know, but --
>
> Q    Would this money have been to help them maybe?
>
> A    Possibly, you know.

This brief passage might show the Defendant had a motive to take money from the Plaintiffs, but many, if not most, people need more money than they have. The passage cannot, however, reasonably be read as the Defendant's admission that she did take money from the Plaintiffs to help her daughter and grandkids. In her objection to the Plaintiffs' motion, the Defendant says she did not take any money from the Plaintiffs without their knowledge in order to provide for her daughter and grandkids, did not take any unauthorized or illicit action in order to provide financial assistance for them, and never received or admitted receiving money from the Plaintiffs by checks that were not signed by any of the Neighborses. Further, the Court has concerns about the Plaintiffs'

effort to use a transcript of a videotape of a police interrogation of the Defendant as evidence to support their claims against her. The Plaintiffs describe the Defendant's statements in the transcript as "testimony," but there is no indication the Defendant was placed under oath before she was questioned, and she had no attorney with her to ask follow-up questions to explain, correct, or clarify her answers.

**Discussion**

  **A. Summary Judgment rules**

  Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[2] The substantive law identifies which facts are material.[3] A dispute over a material fact is genuine when the evidence is such that a reasonable factfinder could resolve the dispute in favor of the party opposing the motion.[4] In adjudicating disputes, bankruptcy courts usually both determine the law and find the facts. In deciding a summary judgment motion, though, the Court is limited to its role of deciding legal questions, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party about a material fact is sufficient to require a trial[5] at which the Court would act in its

---

[2] Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id*.

[5] *Id*. at 249-50.

7

factfinding role.  Summary judgment is inappropriate if an inference can be drawn from the materials properly submitted either to support or oppose the motion that would allow the non-moving party to prevail at trial.[6]

**B.  The Plaintiffs are asking the Court to ignore the Defendant's denials of culpability, and make inferences and otherwise view the facts in the light most favorable to their position, things the Court can't do in ruling on a summary judgment motion.**

At most, the Plaintiffs' materials might establish that (1) the Defendant received in 2007 and 2008 the eight checks identified in the Plaintiffs' supporting affidavits and deposited the checks into her own bank account, (2) the Defendant sometimes signed documents on behalf of the Plaintiffs, and (3) the Defendant now knows the eight checks were not signed or authorized by Mark Neighbors, Shelly Neighbors, or Marcus Justin Neighbors.  From this, the Plaintiffs ask the Court to infer that the Defendant forged the Neighborses' signatures on the eight checks.  But these facts are not enough to establish that the Defendant improperly obtained the proceeds of the checks from the Plaintiffs.  Notably absent is any evidence that the Defendant herself signed the checks in question, and she denies that possibility.  And the evidence supporting the third point is questionable — as indicated, it appears the Defendant may have misunderstood an interrogatory that asked her to identify checks that she knew had not actually been signed by one of the Neighborses to be asking her instead to identify which one of them had signed the checks.  The Defendant asserts in her objection that the eight checks were in

---

[6]*See id*. at 248.

fact signed by one of the Neighborses, further indicating her apparent misunderstanding of the interrogatory. The materials do not establish that the Defendant forged the signatures of one or more of the Neighborses on the checks without authorization from any of them, or otherwise knew when she received the checks that they were not properly made payable to her. The Plaintiffs are asking the Court to view the materials in the light most favorable to their position, something the Court simply cannot do in deciding their summary judgment motion.

**Conclusion**

For these reasons, the Plaintiffs' motion for partial summary judgment must be and it is hereby denied.

# # #